Good morning. Judge Jill Pryor and I are delighted to have had with us this week Judge Mike Malloy who serves on the Eighth Circuit. He has a distinguished history in the Federal Judiciary and it's really been marvelous to be with you. Thank you. Thank you. I enjoyed being here. And with that, you know our system. It's a traffic light system and so when the red light comes on, we would appreciate you winding up. But we're delighted to hear from you. You can proceed. May it please the Court. My name is Colin Garrett and I represent Appellant Craig Near. There are four arguments that I would like to address this morning. The prejudicial testimony of Government Witness Montgomery Fisher, the constructive amendment of the indictment, the insufficiency of the evidence on the wire fraud counts, and the insufficiency of evidence on the false claims counts. The testimony and slides of Montgomery Fisher lowered the government's burden of proof by equating simple lying and stealing with guilt. He said basically, I'm an NSF lawyer. My office investigates these cases. And if you lie and steal, quote, DOJ will prosecute you and send you to jail. Now this testimony was irrelevant to Mr. Near's state of mind because this was communicated to him at a presentation given after the award of the NSF grant. So the scheme alleged in the indictment to fraudulently obtain grants and contracts, as to that NSF grant, was over and done with. And really, there was no other relevant purpose for the testimony as well. But the prosecution designed its case and argument on exactly this incorrect watered down theory of guilt. They made alleged lies and theft by Mr. Near a central theme of their case that occurred over and over again. There was extensive testimony they presented from agents and other witnesses about so-called theft by Mr. Near. This was not an element of any charged crime. The district court judge only admitted this evidence under Rule 404B. But agents testified for hours on the personal expenses that Mr. Near made with the money that Janzico earned under the grants and contracts at issue here. What about the court's instruction that it's not a crime as charged in the indictment nor an element of any charged crime to use money derived from federal grants or contracts for personal expenses? Doesn't that cure the problem? Given the extent and the forceful nature with which the government argued that the jury only had to find that Mr. Near lied and stole, I don't believe that that did cure the problem. In opening, the government said, Dr. Fisher told Mr. Near and the other attendees that lying to obtain an SBIR grant or lying about what you did under a grant is a crime, period. In closing, they accused Mr. Near 13 times of pocketing or taking or keeping agency payments and then said, quote, if you focus on the money and on the lies, it's obvious that Mr. Near and Janzico are guilty. And I don't believe that the instruction from the court could possibly cure the immense reiteration of this basic watered-down standard of proof that the prosecution pushed throughout its case. The hardest part about this argument from my standpoint and your standpoint is the standard of review. That makes it really tough, I think, to prevail on that argument. You want to address that? This was objected to and I think that No, I'm talking about the plain error review. I guess I'm talking about the loss amount. The others of your two claims, I mean, when we look at those. The insufficiency claims? Yes, sir. On those? Well, let me, why instead of skipping from that. So as I understand the government's argument, because you didn't object during opening statement, you waived the argument. Is that the way you understand it? I have never heard that theory advanced that before evidence is presented that the defense is required to object to it. So I disagree there. That is their argument, right? I mean, we'll hear from Ms. Barron. That was part of their argument as advanced in the briefs, that's correct. What I recall from spending time at the Russell Building was that it was kind of a matter of custom that you just kind of didn't interrupt the other side's oral argument. Am I misremembering that or is that? I think that's a correct statement, both of practice and as a strategic matter, I don't know whether the government is going to introduce evidence to back that up. If there's a really inflammatory statement at opening that is not then backed up with evidence, I might argue that there's been so much prejudice that there has to be a mistrial. But I would generally wait and see because I don't know for sure what they're going to present. So I agree that it's not only custom but better practice to wait and see what they present. So for all those reasons, that's correct. I didn't object in opening when they highlighted that testimony. As soon as we got to the testimony of Mr. Fisher, I certainly did object. And the district court judge partially granted that and limited the number of slides they could put in. But there was still enough damage done to, I think, severely prejudice Mr. Neer's case. And when you get to your other claims, if you would just couch your discussion in terms of what problems you face with the standard of review, that would be great. Let me jump right to that. On the constructive amendment issues, the government has alleged that this is invited error. And there are two reasons that that is wrong. First of all, generally I don't think that invited error applies. And they cited no cases where invited error was held to apply in a constructive amendment case where it's clear, I think it's clear the indictment was constructively amended. We have a major procedural defect in the proceeding here, right? And we're arguing about whether the court is going to correct that or not. But there's no denying that the jury applied the wrong standard. And they haven't cited any cases in a constructive amendment case where both sides asked for a simple pattern instruction, and the judge gave that, that that was held to be invited error. And I think the rationale is that a defendant who doesn't request a pattern instruction but simply fails to object and obviously is reviewed under plain error is really in no different situation than one where, as here, where we did join the prosecution in asking for the pattern instruction. There's no tactical advantage gained by the defense in that situation. It would be one thing if we asked for a custom instruction that benefited the defense in some material way vis-a-vis the pattern instruction. But otherwise, this is just kind of a gotcha doctrine to block review of a very serious procedural problem. So I would— I thought that the government had actually requested an instruction that included the term willfully. Is that not right? I don't recall that, and I don't believe that's correct. And it would have been a good point for them to bring up in their briefing if they had, and I'm sure it wasn't mentioned there. So I would have to check, but I respectfully think that is—that's incorrect. The second reason that I wanted to point out that invited error doesn't apply here is because we know from this Court's Castro case that constructive amendment can occur both from incorrect jury instructions but also incorrect prosecutorial argument. And we had both here. And the defense obviously did not invite the incorrect government argument in closing that they could convict without finding that Mr. Neer acted willfully as to the wire fraud claims or that he knew that the misrepresentations in the certifications were material to the agencies as to the false claims. So for that independent reason, invited error doesn't bar review, and the Court should review under plain error here. And I think plain error obviously is, in its own right, sometimes a challenging hurdle to clear, but I think we clearly have—changing the mens rea from that charge in the indictment is obviously error. And it was plain because back in 1995 in Canciliary, this Court explained that exactly the same mens rea error as occurred here was reversible error. There, too, the grand jury alleged that the defendant acted knowingly and willfully even though the law only required knowingly. And therefore, the Court and the government was on notice here that that was effectively a constructive—that without that, there would be a constructive amendment. The third prong of plain error is also satisfied because this clearly affected Mr. Neer's substantial rights. If you look at the record, there's no evidence that Mr. Neer acted willfully, that is, with a bad purpose to disobey the law. As to the false claims, there was no evidence that he knew that the very minor misrepresentations made in the certifications that underlay the False Claims Act accounts were material to the agencies. And in fact, there was testimony from a defense expert witness that the agencies did not consider these things material. So these affected substantial rights. And the Court has certainly said that convicting a defendant of an unindicted crime affects the fairness, integrity, and public reputation of the judicial proceedings, and that's from the Madden case. And that fulfills the fourth prong of the plain error standard on the constructive amendment issues. Your red light's on, but we'll hear from you again. Thank you. Good morning. Good morning. May it please the Court, Lindsay Barron for the United States. The defendants lied to get almost $800,000 in public money set aside for innovative small businesses, and they convinced NSF and NASA that Gen Zco was a thriving business concern with deep operational and managerial depth, with a history of successful business ventures, and with access to top-notch facilities, when in fact, Gen Zco was an insolvent one-man show that had never successfully brought anything to market. And their fraud frustrated the purpose of the SBIR program and deprived the government of the opportunity of investing in an honest, deserving, and legitimate small business. Would Judge Thrash held that the government got everything they bargained for in this case? Isn't that a finding that we have to respect in this record? Judge Thrash found that Gen Zco provided the reports, that it gave the deliverables, the things that were required under the awards, but that doesn't solve the case. And that is true. Gen Zco turned in reports, and it provided the prototype that was required under the NASA program, but that doesn't tell us how you calculate loss. The first error that the district court made was deciding that the government benefits rule doesn't apply at all. And that's a... Well, you were late raising that, weren't you? No, Your Honor. We did not object. I mean, this was not an objection, as we stated in our record. What's the difference between a clarification and an objection? The PSR found that the loss amount was over $12 million, and we didn't disagree with that. We thought that was right. We knew that the defense... Where did you get the $12 million? So there's about $800,000 in SBIR awards that were actually granted, and there was a total of almost $12 million in awards that were applied for but were not granted. And so the intended loss, we argued, was $12 million. It seems like this was a case where the judge thought you were way overreaching, asking for $12 million. I can't disagree that he probably saw some sticker shock there with the intended loss figure. But... So what are you asking for now, $800,000? We have abandoned our argument that actual loss should have been included. We're only... I mean, I'm sorry, that intended loss should have been included. We're only asking for loss based on the actual value of the awards that were granted. But the reason why it's not waived... So first of all, think about what is an objection to the PSR. We agreed with the loss amount, but we knew that the defendant was going to ask for an offset. And so we wanted to front that issue for the court. This is not subject to lawsuit, to offset. The PSR is right. This is the loss amount. And think if we had never issued that clarification letter at all. What the defendant is suggesting is that we would have been prevented from arguing at sentencing that application note 3E, which is the credits against loss provision, can't apply to the government business rule, that the government business rule is not subject to offset. He's... The interesting thing about that argument to me is, on the one hand, you're saying they didn't object during opening, so they're barred from raising objection later. I mean, it doesn't seem like you're applying the same rules to yourself as you're applying to the defendant. Well, and I'll admit, Your Honor, I have no case saying that you have to object in opening. But another issue we raised in our brief on that point is that the objection that they raised to the Fisher testimony was that it was prejudicial. They did not say, objection, Your Honor, this lowers the burden of proof. And here's why that's important, and here's why that argument is actually waived on appeal. Under Rule 103, when you raise an objection below, you have to articulate the basis so that the district court can correct an error. So, saying that it's prejudicial, it's a 403 issue, and then arguing it on appeal that you've lowered the burden of proof are two different things, and that was not fronted to Judge Thrash. So, were you giving up on your argument that their failure to preserve it had opened it  Yes, Your Honor. Yes, Your Honor. I'm glad about that. Thank you, Ms. Baird. You'd have counsel jumping up and down every other statement and opening the argument. No, we still think it was waived, but that's because the objection articulated below is You know, the defense says, well, judges oppose speaking objections, but you still have to explain why it's error so that the court can correct that error. But even still, the thing that's interesting about this Fisher testimony is that the reason why they objected is because, and this is cited in footnote two of our brief, the defense counsel said, there's no heightened mens rea in this case. There's no willfulness requirement. And now on appeal, they ask this court to find that it was error for the district court to agree with that and give the pattern jury instruction on wire fraud. And so, Your Honor, the defendant consistently maintained the position that there was no heightened mens rea below. He said it in objecting to the Fisher testimony. He asked for the pattern instruction and invited that error. The district court went along and gave that instruction. And the government's arguments in closing were based on the elements that everybody agreed were going to apply. So as to the prosecutorial argument, Your Honor, we were all arguing the same elements because that's what we agreed to at the charge conference. That's the error that they invited. But even under plain error review, Your Honor, they cannot show that the error was plain or that it affected substantial rights for two reasons. Cancel year is different from this case in an important respect. In that case, this court was concerned about the issue of sandbagging. The defendant created a defense based on lack of willfulness. And then the court found that the prosecutor pulled the rug out from under them by amending the indictment after the close of the case. That's not true here. What the defendant argued at trial was that he performed under the contracts, that the lies weren't material, that he didn't have the intent to defraud. His defense was not based on willfulness, so it's distinguishable from the cancel year in that way. And here's why that's important. The minute you can distinguish that case from this case, the error is not plain. It's not obvious and clear, which is the standard of this circuit. But second, he cannot prove substantial prejudice. Remember, it is not the government's burden to prove that he would still have been convicted if the willfulness instruction had been given. He has the burden of showing that he would not have been convicted. And this he cannot do. There was a good faith instruction. And we presume in this circuit that juries follow the instructions that they're given. The jury also had to find intent to defraud. And that's what the Fisher testimony really got to. There were lies and stealing throughout the . . . But can I ask you about the reason for that testimony? I mean, you used to argue that it was material, but the fact that these defendants or this defendant was told not to lie or steal after he'd already made the misrepresentations that you're prosecuting him for, how does that show materiality? Because you have to look at where that . . . where that . . . those slides that came from a presentation that he attended. You have to look at where . . . After he had already submitted the proposal and it had been accepted. Right. And so you have to look at where that occurred throughout the scheme that we charged in all these proposals. So that occurred after the first NSF proposal was granted. So he submits this proposal and it contains these lies. He goes to the conference and he's told you cannot do this. He does not ever change his behavior. So when he applies for the grants, I mean, I'm sorry, for the awards with NASA, the proposals contain the same lies. And from that, the jury could infer that the errors and the lies and the misrepresentations in the initial proposal and in every proposal since, because they didn't change, was done willfully, was done with intent to defraud, was done to trick the agencies into choosing him for an award. And so that is strong evidence of willfulness. And this is why we wanted to include it, the evidence of the Fischer slides. It showed an intent to defraud. It showed that he was warned that you are under a legal obligation to tell the truth and to spend this money the way that you promised to. And even after that warning, he didn't alter his behavior. But further evidence of willfulness were all of these certifications he had to sign under penalty of perjury. He is told on these certifications that misrepresentations are prosecutable, that this is an offense and you can be prosecuted for lying. That is evidence of willfulness. And for that reason, he can never show that he would have been acquitted if the willfulness instruction had been given. And if there are no further questions on that, Your Honor, I'd like to turn to the government's cross-appeal. The SBIR program is a federal financial assistance program, and the goal is to benefit a public That purpose being strengthening the role of innovative small businesses in the research and development arena of government awards. So why did the district court err? The district court never answered the initial question of, is this even a government program? The district court found that the government business rule doesn't apply because the defendants performed. But those are separate inquiries entirely. Whether they performed, we deal with that later on offsets, should they get an offset. But first you've got to find out, is this the kind of program that even triggers this rule? The district court never made a finding on that. He did make a finding though that he was an intended beneficiary, didn't he? He did, Your Honor. And you reach that question after you first find out if the government business benefits rule applied. And the district court never even considered whether the SBIR program, as a program, triggers this rule in the first place. He said conclusively, I don't think that rule applies here. But he did make a factual finding that he was an intended recipient, right? Well, so he made a factual finding that GenZeco was a small business and therefore eligible to apply. And he then drew the legal conclusion that being eligible to apply is the same as being an unintended beneficiary. So we still think it's de novo review because it's an interpretation of the guidelines, an application of those guidelines to a finding that GenZeco was a small business, which it is. That's not disputed. They were eligible to apply. But that doesn't make them an intended beneficiary. But again, back to the... Well, I'm looking at the application note. It seems like the application note deals with somebody with food stamps. So they're eligible to apply, they're eligible to receive an award. It seems to me that this falls more under the unintended use clause, not the unintended recipient clause. Well, and so the food stamps example is describing that diversion of money to unintended uses. And even on that, the defendant concedes in his reply brief that the district court made no findings on whether there was a diversion and that if that's where this court ends up, that remand is appropriate. We still believe that they're an unintended beneficiary because the evidence at trial showed that they were selected because... And remember, the purpose of the SBIR program is not just to fund the research, but it's commercialization. Commercialization is the linchpin of this program. And so what the agencies look for is the capacity of a business to be able to commercialize whatever research the government is investing in. And so going back to what are the program goals, the statutory language, this is 15 U.S.C., I think 678, we cite it in our brief, and I urge the court to look at that citation in our brief. The declaration of policy in that statute makes clear that the purpose of this program is to invest in small businesses so that they can do research and development that they otherwise can't afford because it's expensive and they're small businesses, so that then they can compete in the technology sector and hopefully someday be able to compete for government procurements, but it's not a procurement yet. And that's another mistake that the defendant makes. What this program is, is it's an assistance program to these businesses to be able to do the work. And we believe, Your Honor, that the result is compelled by this court's prior opinion in Maxwell. So in Maxwell, what this court found is that when you've got a program, and even in that case it's a procurement program, so we believe the rule applies even more clear here where you're not dealing with a government procurement. But in Maxwell, where you've got a government set-aside program that is designed to further a public policy, where there's a purpose, the government isn't just buying widgets. It's buying something intangible that it finds to be of value. Investing in small businesses, giving opportunities to disadvantaged businesses, or here, investing in innovative small businesses to do technology research. If that's the purpose of the program, then you're under the government benefits rule. Now whether they're an intended beneficiary, that's a separate question. The court found that they're a small business eligible to apply, absolutely, there's no dispute there. But they were not intended beneficiaries because the consistent testimony was that they lacked this commercialization appeal. That's what they lied about. That's why they were selected for funding. And they diverted that money to unintended uses. So even if you find that they were an eligible, they were a qualified beneficiary, remand is still appropriate so that we can figure out how much was diverted. None of that is subject to offset under Application Note 3E. The Application Note 2B, I'm sorry, 3F2, which is the government benefits rule, speaks pretty clearly that loss shall be considered no less than either the full value of the contract or the amount diverted. That's the floor. To apply Note 3E to that basically renders the government benefits rule superfluous because you're really just calculating loss the way that you would under 3A. How much did they get? What was the value? And what's our sum? And so if we follow the defendant's perspective here, there's no point to the government benefits rule. And again, the language is pretty clear in that rule, Your Honor. So stepping back, these agencies in the SBIR program, they rely on the honesty and the integrity of applicants, which is why they put the onus on the applicant to affirm under penalty of perjury that what they're saying is true. So when fraud is detected and prosecuted, Your Honors, it is important to send a message that there will be serious consequences. These agencies don't have the resources to ferret out fraud. They don't have the resources of the FBI or the IRS. And so they rely on cases like this to send a message that there are consequences. Can I just add, you said that the government benefits rule would be superfluous if what was intended to be received or the difference between what's intended to be received and what was actually received is the amount of loss, right? Well, if we calculate loss the way that the defendants are, it would be the same. But that's exactly what the application note says. The person is entitled to $100 of food stamps gets $150, the loss is $50. Right, right. And that's what, so the argument is that the rule tells us how to calculate an offset. If there was an amount, let's say that they received it lawfully, but they diverted, then that's how you do the offset. The offset is if they got $150,000 and $50,000 of that was legitimate, that's the offset. You don't then turn to 3E and figure out what was the value to the government. And so, Your Honor, what kind of message does the Senate's here send? You're over your time, so you can wind up. Thank you, Your Honor. I'd like to address the sentencing issues in the government's cross appeal. You know, at the outset, I want to say that the government in its briefs suggested that Mr. Neer, by the court correctly finding there was no pecuniary harm and no loss, that Mr. Neer somehow got a pass. Nothing could be further from the truth. He's paid a heavy price. He suffered nine felony convictions. He spent four months in custody. He had a year of supervised release, which he's now successfully completed. And he was also blacklisted from participating in any projects with government grants or contracts for five years, which has essentially rendered him unemployable in his field, because any company that would need his skills has government grants or contracts. So, you know, this is not a free pass. He's already paid a heavy price. But the court correctly found there was no pecuniary harm and thus no loss. The court correctly did not apply the government benefits rule in 3F2. To apply, the court would have to find that these grants and contracts were government benefits within the meaning of that application note and that either Mr. Neer or Genziko were unintended recipients or they diverted the benefits to unintended uses. We've all agreed the court made no finding either way on diversion to unintended uses. The court did not plainly err in finding these particular SBIR programs were not government benefits.  The case that the government relies so heavily on, Maxwell, involved these disadvantaged business enterprise set-aside programs. And this court in that decision specifically described them as affirmative action programs designed to benefit women and minority-owned businesses. But the application note just says any government benefit grant, loan, entitlement program, and then it uses food stamps. Is food stamps intended to be a disadvantage? I mean, they use food stamps as a specific example. So I think their application note is broader than what you're trying to cabinet to. I think that the application note started with programs that were clearly unilateral transfers like food stamps. The government gets nothing in return and offered little other guidance. And as the courts have explored what government benefits mean for the purpose of this, they have found that an expanded variety of programs maybe should qualify. But so far, they have said that as programs like disadvantaged business enterprise set-aside contract programs that are designed to advantage someone. We could say they're analogous, even though they're not such unilateral grants, but analogous to food stamps because they are intended to benefit a specific category of person that needs help. And SBIR programs are not like that, and I don't believe any circuit court has found that they are, because Congress has a policy aim. It's absolutely correct they want to foster innovation in the high-tech arena, but small businesses are a vehicle for doing that. They want them to be included because they can add something valuable to that sector of our economy, and they do have some disadvantages. But they haven't suffered any historical discrimination. It's not that Congress wants to benefit small businesses per se. It's because it would be useful for these aims to do them, and that makes it different from food stamps or affirmative action programs. I'll also note that Maxwell held that the district court didn't clearly err because this court had not previously held that those DBE programs are government benefits. And since no court at this level, and this court certainly has not held, that SBIR programs fall under the government benefits definition, I certainly think the court didn't plainly or clearly err in deciding not to apply the government benefits rule. The district court here should benefit from that same lack of precedent or lack of clarity here. What do you think we are if we say the government benefits rule should have been applied? Where does that leave us? Well, there still hasn't been a finding that Gen Zika was an unintended beneficiary. The government is suggesting a completely unworkable standard for that. I believe that it's clear that unintended beneficiary has to be measured by the criteria for application, in this case that you're a small business, or in those DBE programs that you're a minority or women-owned business. Because to suggest that to be an intended beneficiary you have to have the capacity for commercialization, how is any court going to judge that? That's an unworkable factual standard. Here, the testimony was clear and the district court judge found that they're an intended beneficiary because they were a qualifying small business because they had less than 500 employees. I'm out of time, but part of the answer to your question would be that you have to apply offset under 3E1, even if the government benefits rule did apply, even if those other things had been found. Thank you. Thank you. Formal. All right.